[Civ. No. 1121.   Fourth Appellate District.—October 10, 1934.]

THOMAS WHELAN, District Attorney, etc., Appellant, v. LeROY BAILEY, Public Administrator, etc., Respondent.

Thomas Whelan, *in pro. per.*, District Attorney, Frank T. Dunn, Chief Deputy District Attorney, and James B. Abbey and Carroll H. Smith, Deputies District Attorney, for Appellant.

DeRiemer & Fischer and C. A. Brinkley for Respondent.

R. M. Switzler, Frank J. Macomber, Seymour W. Wurfel, H. C. Gardner and J. A. Donnelly, *Amici Curiae* on Behalf of Respondent.

BARNARD, P. J.—The county of San Diego adopted a charter in 1932 which was approved by the legislature and went into effect on July 1, 1933. Section 17 of article IV of this charter contains the following: "There is hereby created the office of county counsel. The district attorney shall be *ex-officio* county counsel." Section 31 of article VI of the charter, in setting forth the duties of the county counsel, includes the following:

"He shall also act as attorney for the public administrator in the matter of all estates in which such officer is executor,

administrator with the will annexed, or administrator, and the county counsel shall, in every such matter, collect the attorney's fee, allowed therein by law and pay the same into the county treasury.''

After the charter went into effect the respondent public administrator filed in the Superior Court of San Diego County a petition for letters of administration in the estate of Frank Plotos, also known as Frank Pololus, deceased. The public administrator was represented in this matter by a firm of San Diego attorneys. Shortly thereafter, the petitioner herein demanded of the respondent, in writing, that he be substituted as attorney in said matter in accordance with the charter provision above set forth. This demand having been refused, the petitioner filed in the superior court a petition for a writ of mandate, asking that the respondent be compelled to substitute the petitioner as attorney of record in said estate and to permit the petitioner to act as his attorney in all estate matters thereafter handled by the respondent as public administrator. A demurrer to the petition was sustained, the petitioner declined to amend, and from the judgment then entered this appeal is taken.

The appellant's position is that the charter provision is controlling since the charter was authorized by section 7½ of article XI of the state Constitution, and since that section permits the creation of new offices and the giving of new duties to officers by charter provisions. It is then argued that the entire matter is one of policy, the wisdom of which has been determined by the adoption of the charter.

The first and most important question is whether this particular charter provision is authorized by section 7½ of article XI of the Constitution. The purpose of that section ''was to give local self-government or county home rule to counties of the state''. (*Reuter* v. *Board of Supervisors*, 220 Cal. 314 [30 Pac. (2d) 417].) That purpose is declared in the opening paragraph of that section as follows: ''Any county may frame a charter for its own government consistent with and subject to the Constitution (or, having framed such a charter, may frame a new one), and relating to matters authorized by provisions of the Constitution.'' In other words, such charters are authorized and may be framed for the purpose of giving a certain local control over the means of carrying out governmental functions in

such counties, with the limitation that anything in the charters, so authorized, shall be consistent with the Constitution and shall relate only to matters authorized by that fundamental law. While a county is thus authorized to provide for a measure of self-government, this authorization must be and is confined to providing for such functions as are properly governmental in their nature and which are consistent with our general scheme of government.

Is the function contemplated by this charter provision a governmental function within the authorization conferred by section 7½ of article XI? ▮ While the public administrator has a certain public function, in that the state is interested in seeing that someone takes charge of property which is more or less without a guardian, in the performance of his duties he exercises what is essentially a private function, in that he is the personal representative of the deceased, handling the estate for the benefit of the heirs. He obtains his right to so act not by virtue of his office, but by grant of power from the court, his office merely giving him the right to obtain such a grant of power from the court under certain circumstances. After appointment and while acting in the administration of an estate, his functions as the administrator of that particular estate are severable from his status as a public officer, although the two coexist. As the learned trial judge in this case observed:

"I do not see anything fundamentally inconsistent in regarding him so far forth as a functionary of the public, with the view that once he has taken charge of an estate and acquired by judicial grant in the particular case the right to administer it, he has ceased to be active primarily in a public capacity, but has become to all intents and purposes what he is by law, the personal representative of the decedent, for every administrator, executor or administrator with the will annexed is that, and there is a saying that 'no man can serve two masters'. The fact that the public has a sufficient interest in preventing estates from being squandered and seeing that some orderly disposition is made of them, to provide such an officer and sees fit to pay the officer is one consideration. It does not alter the fact that in the essential nature of his duties the officer is the personal representative of the decedent. His governmental function, if such he has, is satisfied when he prevents the property from

being something merely abandoned or allowed to seek the attention of some chance custodian. The state is interested in seeing that such a situation shall not occur. Therefore, it has created this office, and that is the only legitimate reason why such an office exists, but it never was intended, apparently, to render the general course of administration anything different from that in the case of any other personal representative of the decedent, except as to the matter of oath, bond and qualifications generally.''

█ Regardless of what may be said of the legal status of a public administrator when appointed and acting in the handling of a private estate for the benefit of private persons interested therein, the function of his attorney in such an estate is private rather than governmental. The only interest the public has in such an estate, ordinarily, is the same interest it has in any estate, namely, that the same be handled in an orderly manner for the benefit of those interested therein. The only function of an attorney in such an estate is to take the matter through a state court in compliance with state laws regulating and providing an orderly procedure in conformity with the only interest which the public has. The work of such an attorney, if one is needed and employed, is neither for the county nor for the public administrator in his official capacity as such. It is for the public administrator in his capacity as the administrator of a private estate, as the personal representative of the deceased, and is primarily for the benefit of the private parties interested in the estate. The work of an attorney in such a case differs in no respect, material here, from similar work in any estate. The matter of providing attorneys for administrators has never been considered a governmental function. If an attorney is needed, the general law governing the probate of estates indicates how one may be obtained and provides for his compensation from private sources. The charter provision in question attempts to compel the employment of a county official in every such estate, whether an attorney is needed or not, and then attempts to take for the county the compensation thus earned in what is, essentially, a matter of private employment. Whether or not it could be considered a proper governmental function to furnish such services free in certain cases, it certainly is not a governmental function to furnish such services for the benefit of private

persons only as a source of profit to the county. Aside from this hope of profit, the county has no possible interest in the matter of who shall act as attorney for a private estate.

█ We conclude that this charter provision is not within the purposes declared in and contemplated by section 7½ of article XI of the Constitution, and the same is void as in excess of the authority thereby granted to a county.

█ The matter of profit, above referred to, suggests another objection to the validity of this charter provision. If valid, that provision permits the county of San Diego through an agent, the district attorney, to engage in the practice of law for a profit. And a further result would naturally follow. While a county has no interest in the actual administration of such estates, it not infrequently happens that a contest arises between an estate and the county, over taxation or other matters. In such an event, the county would not only be an interested party, but through its agent, the district attorney, would also represent the other side to the controversy. Thus the county would be allowed not only to practice law but to act in this capacity for its own adversary.

█ It is well settled that a corporation may not practice law either directly or indirectly by hiring lawyers to practice on its behalf (*People* v. *Merchants' Protective Corp.*, 189 Cal. 531 [209 Pac. 363]; *People* v. *California Protective Corp.*, 76 Cal. App. 534 [244 Pac. 1089]; 1932 Supp. Cal. Jur. 19). A county is a corporate body, with corporate power, and may be classed as a *quasi* corporation (secs. 3901 and 4000, Pol. Code; *County of Sacramento* v. *Chambers*, 33 Cal. App. 142 [164 Pac. 613]). In *People* v. *Merchants' Protective Corp., supra,* the court said:

''The essential element underlying the relation of attorney and client is that of trust and confidence of the highest degree growing out of the employment and entering into the performance of every duty which the attorney owes to his client in the course of such employment. It is the existence of this essential element as the basis of said relation which has called into being the various statutory regulations governing the admission of attorneys and counselors at law and which embody certain requirements of character, integrity and learning as the prerequisites of such admission to the right and privilege of practicing law. It is the pos-

session or reputation for the possession of these personal qualifications which constitutes, as a rule, the main inducement for the formation of the personal and confidential relation of attorney and client. The intervention of a corporation between the membership it secures and the attorneys it employs, which corporation can in and of itself possess none of these qualifications, obviously leaves out of view the necessity for their existence."

The reasons for the rule that a corporation may not practice law would seem to apply equally in the case of a public corporation. The necessary elements and requirements are as obviously lacking in the one case as in the other.

It would further appear that even the general public interest in such estates as are handled by a public administrator, which has been above referred to, is a matter of public policy which is statewide and which bears no relation to local self-government. It would, therefore, seem that this charter provision, instead of being "consistent with . . . the Constitution" as required by section 7½ of article XI, is in conflict with subdivision 12 of section 25 of article IV, prohibiting the passage of local or special laws affecting the estates of deceased persons and also with such other provisions as that prohibiting a special law where a general law can be made applicable, and that providing that all laws of a general nature shall have a uniform operation.

For the reasons given the judgment appealed from is affirmed.

Marks, J., and Jennings, J., concurred.