[Civ. No. 37237. Second Dist., Div. Four. Dec. 1, 1971.]

LEONARD J. O'KEEFE, Plaintiff and Appellant, v.
ATASCADERO COUNTY SANITATION DISTRICT et al.,
Defendants and Respondents.

**COUNSEL**

Trapp & Kirk and Donald W. Haynes for Plaintiff and Appellant.

Robert N. Tait, District Attorney, Stephen N. Cool, Deputy District Attorney, Orrick, Herrington, Rowley & Sutcliffe, William H. Orrick, Jr., and W. Reece Bader for Defendants and Respondents.

## OPINION

**DUNN, J.**—This is an appeal from a judgment dismissing a petition for writ of mandate after the trial court sustained a general demurrer thereto without leave to amend.

The petition was filed April 28, 1970, by Leonard O'Keefe, Helen Hagedorn and Ernest Hagedorn.[1] Named as defendants were the Atascadero County Sanitation District, the County of San Luis Obispo and five individuals who comprised the county board of supervisors and the board of directors of the Sanitation District.

The petition contained four causes of action. In the first cause of action petitioners alleged: they were residents of the county and of the Sanitation District; the Hagedorns owned real property in the district, while O'Keefe owned no real property within the county; the Sanitation District is located entirely within the boundaries of the county, and does not contain any territory which is located in a city or in another sanitation district; the members of the county board of supervisors are elected from supervisorial districts throughout the county, and they also serve as the board of directors of the Sanitation District; the districts of four of the supervisors are not within the boundaries of the Sanitation District, and the district of the fifth supervisor is only partially within the Sanitation District; the population of the district is approximately 10 percent of the population of the county; the residents of the Sanitation District are not allowed to vote for the directors of the district, but "only for one seat on the County Board of Supervisors."

In the second cause of action it was alleged: the board of directors of the Sanitation District approved an assessment bond to provide funds for a sewerage collection facility within the district; the bonds were approved pursuant to the Municipal Improvement Act of 1913 (Sts. & Hy. Code, § 10000 et seq.) and the Improvement Bond Act of 1915 (Sts. & Hy. Code, § 8500 et seq.), which do not provide that the matter be submitted to the voters, but only that written protests to the proposed improvement or assessment may be filed by property owners at a hearing on the improvement; petitioner O'Keefe was denied the right to protest because he did not own real property within the district; defendants planned to sell assessment bonds in the amount of $3,010,869.07 on April 29, 1970, and thereafter to proceed with the improvement project, "in violation of the constitutional rights of petitioners."

In the third cause of action petitioners alleged: on October 3, 1967 a

---

[1]Only petitioner O'Keefe is appealing.

special bond election was called in Improvement District No. 1 of the Sanitation District to incur an indebtedness for acquisition, construction and completion of sewerage collection treatment and disposal facilities for the benefit of said improvement district; the bonds were approved by more than a two-thirds majority of the voters; thereafter the bonds were sold and the proceeds collected; on July 7, 1969 defendants voted to transfer $250,-000 of these proceeds to county project account No. 3812 to pay engineering estimate costs incurred in connection with a different project; this action constituted a breach of fiduciary duty by defendants in that a portion of the general obligation bond fund was used for purposes not authorized by the voters.

In the fourth cause of action it was alleged: on January 26, 1970 the five individual defendants, acting as the county supervisors, loaned $110,000 of the county general fund to the Sanitation District for the purpose of paying for engineering reports concerning the assessment bonds; said loan was illegal "as a conflict of interest," in that defendants acted as the county supervisors in making the loan and as the directors of the Sanitation District in accepting and spending the funds.

On the basis of these allegations, petitioners sought a writ of mandate commanding defendants: (1) to reapportion the Sanitation District; (2) to halt the sale of the assessment bonds and "all proceedings" relating thereto; (3) to return the $250,000 to the general obligation bond fund, and use such sum for the purposes voted upon; (4) to repay to the county general fund the $110,000 loaned to the Sanitation District; and (5) to resign either as county supervisors or as directors of the Sanitation District.

On April 29, 1970, the trial court issued an order to show cause why a peremptory writ of mandate should not issue (Code Civ. Proc., § 1088). The matter was heard on May 1st and submitted for decision. On that same date a demurrer was filed[2] in which defendants generally demurred to each cause of action, stating as a separate ground that each cause was barred by the statute of limitations contained in Streets and Highways Code section 10400. Defendants also interposed special demurrers to each cause of action.

On May 18, 1970, the court sustained the demurrers without leave to amend on the grounds that none of the causes of action stated facts suffi-

---

[2]The demurrer actually was filed on May 26, 1970, but was ordered to be filed *nunc pro tunc* as of May 1, 1970, the order stating that the argument on the demurrer had been heard on May 1st. Thus, the court apparently considered defendants' arguments at the hearing on the order to show cause as being in the nature of a general demurrer to the petition. At that hearing, counsel for appellant objected to defendants' arguments. The court overruled the objection, and allowed defendants to proceed. Appellant does not now challenge the procedure.

cient to constitute a cause of action, and that each was barred by the statute of limitations.[3] On May 25, 1970, judgment was entered dismissing the petition. (Code Civ. Proc., § 581, subd. 3; *Michaels* v. *Mulholland* (1953) 115 Cal.App.2d 563, 564 [252 P.2d 757].)

Petitioner O'Keefe appeals from the judgment. (Code Civ. Proc., § 904.1 subd. (a); *Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8]; *Rudolph* v. *Fulton* (1960) 178 Cal.App.2d 339, 343 [2 Cal.Rptr. 807].) He contends the trial court "committed reversible error" in sustaining the demurrers without leave to amend. Accordingly, we must determine (1) whether any of the counts in the petition stated facts sufficient to constitute a cause of action (Code Civ. Proc., § 430, subd. 6); and (2) if no causes of action were stated, whether the trial court abused its discretion in denying leave to amend (Code Civ. Proc., § 472c).

### First Cause of Action

In the first cause of action it was alleged: the members of the county board of supervisors also serve as the directors of the Sanitation District; the supervisors are elected by districts throughout the county; although the population of the Sanitation District is approximately 10 percent of the population of the county, the district of only one county supervisor is even partially within the boundaries of the Sanitation District; thus, the residents of the Sanitation District are not allowed to vote for the directors of the district, but for only one seat on the county board of supervisors.

Appellant contends this procedure violates the "one man, one vote" principle, as applied to the election of local officials in *Hadley* v. *Junior College District* (1970) 397 U.S. 50, 56 [25 L.Ed.2d 45, 50-51, 90 S.Ct. 791]: "[A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election, and when members of an elected body are chosen from separate districts, each district must be established on a basis that will insure, as far as is practicable, that equal numbers of voters can vote for proportionally equal numbers of officials."

The board of directors of a county sanitation district is not elected. Rather, the members of such board are designated in Health and Safety

---

[3]Since the statute of limitations is not a ground of special demurrer under Code of Civil Procedure section 430, it necessarily falls within the general demurrer provision contained in subdivision 6 of that statute. (3 Witkin, Cal. Procedure (2d ed. 1970) Pleading, § 812, p. 2422.) Therefore, any count in the petition which was barred by the statute of limitations failed to state facts sufficient to constitute a cause of action.

Code section 4730. The composition of the board is determined by the location of the district in relation to other political subdivisions within the county. As alleged in the petition, the Atascadero County Sanitation District is entirely within the boundaries of San Luis Obispo County and does not contain any territory which is located in a city or in another sanitation district. Therefore, under section 4730, the county board of supervisors is the board of directors of the district.[4]

Since the board of directors is not chosen by election, the "one man, one vote" principle is not applicable to compel reapportionment of the board. (*Sailors* v. *Kent Board of Education* (1967) 387 U.S. 105 [18 L.Ed.2d 650, 87 S.Ct. 1549].) Appellant argues that the principle nevertheless is applicable under the facts alleged, because the county board of supervisors is elected[5] and the members of the board of directors of the Sanitation District are "in effect elected once removed."

In *Sailors*, the United States Supreme Court held there was no constitutional infirmity in a system whereby the members of a county board of education were chosen, not by the electors of the county, but by delegates from local school boards who were elected by popular vote of the residents of the local school district. The court first determined that the county board of education performed substantially administrative functions which, while important, "are not legislative in the classical sense." (387 U.S. at p. 110 [18 L.Ed.2d at pp. 654-655].) The court then concluded (387 U.S. at p. 111 [18 L.Ed.2d at p. 655]): "At least as respects nonlegislative officers, a State can appoint local officials or elect them or combine the elective and appointive systems as was done here. . . . Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man, one vote' has no relevancy."

The powers of a county sanitation district are defined in Health and Safety Code section 4738 et seq. (art. 4 of the County Sanitation District Act, Health & Saf. Code, § 4700 et seq.), and include: (1) the power to acquire and dispose of property (§§ 4740, 4743); (2) the power to construct and complete sewage collection, treatment and disposal works (§ 4741); (3) the power to issue bonds (§ 4746); (4) the power to levy taxes to meet the obligations evidenced by its bonds, "to maintain the works

---

[4]Health and Safety Code section 4730: "The governing body of a sanitation district is a board of directors of not less than three members. . . . If the district includes no territory which is in cities or sanitary districts, then the county board of supervisors is the board of directors of the district."

[5]Appellant does not challenge the method of electing the county board of supervisors.

of the district, and to defray all other expenses incidental to the exercise of the district powers" (§ 4747); (5) the power to incur and discharge indebtedness (§ 4764); and (6) the power to adopt ordinances to effect any of its powers, or to carry out any of the purposes for which it was formed (§ 4766).

Thus, although a county sanitation district has a limited power to adopt ordinances, its functions are primarily administrative, or executive, rather than legislative.[6] Under section 4730 the members of the board of directors of a sanitation district are chosen by the Legislature, a method expressly sanctioned in *Sailors*. (387 U.S. at p. 108 [18 L.Ed.2d at p. 653].) We perceive no constitutional infirmity in the fact that the directors so chosen happen to be persons who were elected to serve in another capacity, *viz.*, as county supervisors. In this regard, we note that the Atascadero County Sanitation District is located entirely within the county, and does not include the territory of any other political subdivision. Therefore, the manner of governing the district, and the improvements constructed therein, concern and affect not only the residents of the district, but the residents of the entire county.

Appellant further contends section 4730 is unconstitutional because it denies the residents of the district a republican form of government as guaranteed by article IV, section 4, of the United States Constitution.[7] The argument apparently is that while the board of directors of a sanitation district allegedly exercises "tremendous powers" which affect the residents of the district, these residents are allowed to vote for only one member of the board. Whatever may be the merits of this claim, the "guaranty clause" has no bearing, and cannot be the foundation for judicial relief, since it is not a source of a constitutional standard for invalidating state action. (*Baker* v. *Carr*, 369 U.S. 186, 223, 226-227 [7 L.Ed.2d 663, 689, 691, 82 S.Ct. 691]; see also dissenting opinion in *Reynolds* v. *Sims*, 377 U.S. 533, 591 (fn. 4) [12 L.Ed.2d 506, 544, 84 S.Ct. 1362].)

The general demurrer to the first cause of action was properly sustained because it does not state facts sufficient to constitute a cause of action

---

[6]Because of its conclusion that the functions of the county board of education were administrative, the Supreme Court in *Sailors* left open the question whether a state may constitute a local *legislative* body through the appointive rather than the elective process. (387 U.S. at pp. 109-110 [18 L.Ed.2d at pp. 654-655].) The court has not yet spoken on that question.

[7]Article IV, section 4: "The United States shall guarantee to every State in this Union a Republican Form of Government, and shall protect each of them against Invasion; and on Application of the Legislature, or of the Executive (when the Legislature cannot be convened) against domestic Violence."

under either the equal protection clause or the guaranty clause of the United States Constitution.

## Second Cause of Action

■ Appellant alleged that sale of the assessment bonds would violate his "constitutional rights" because the statutes under which the bonds were "approved" by respondents did not provide for submission of the matter to the voters. He further alleged that under these statutes he was denied the right to protest the assessment because he did not own real property within the Sanitation District.

Respondents contend the demurrer to the second cause of action was properly sustained because that cause was barred by the statute of limitation[8] contained in Streets and Highways Code section 10400, which provides: "The validity of an assessment or supplementary assessment levied under this division [division 12, the Municipal Improvement Act of 1913] shall not be contested in any action or proceeding unless the action or proceeding is commenced within 30 days after the assessment is levied. . . ." Under Streets and Highways Code section 10312,[9] the assessment is levied when the governing body of a sanitation district adopts a resolution confirming the assessment and ordering the proposed improvement to be made. (*Fahey* v. *City Council* (1962) 208 Cal.App.2d 667, 676-679 [25 Cal. Rptr. 314].)

Appellant argues that section 10400 is not applicable because it relates to an action contesting the validity of an assessment, whereas, appellant avers, in his second cause of action he is contesting the validity of the bonds. However, his pleaded attack is based only upon his claim that the assessment was invalid because he was not permitted to protest it. The bonds were issued to represent and be secured by the assessments made to pay the cost of the improvement (Sts. & Hy. Code, § 8570); and the bonds or the

---

[8]Respondents also contend that the first, third and fourth causes of action likewise were barred by section 10400. We disagree. Only the second cause of action challenged sale of the assessment bonds. The first alleged malapportionment of the board of directors of the Sanitation District. The third and fourth alleged breach of fiduciary duty and conflict of interest, respectively, on the part of respondents in transferring certain funds from one account to another. Thus the first, third and fourth causes of action alleged facts entirely different from those which were the basis of the second cause. Respondents have cited no statute of limitations applicable to the first, third or fourth causes of action.

[9]Streets and Highways Code section 10312: "When upon the hearing the proposed assessment is confirmed as filed, as modified, or corrected, by resolution the legislative body shall order the proposed improvement to be made or acquired, and declare its action upon the report and assessment. The resolution shall be final as to all persons, and the *assessment thereby levied* upon the respective subdivisions of land in the assessment district." (Italics added.)

interest thereon could be paid only out of a fund consisting of assessments collected for payment of the improvement upon which the bonds were issued (Sts. & Hy. Code, § 8671).[10] Therefore, if more than 30 days before the petition was filed respondents adopted a resolution confirming the assessment, and such fact appears in the petition, appellant cannot avoid the bar of section 10400.

In considering the sufficiency of the petition as against the demurrer, the trial court was not restricted to matters appearing on the face of the petition, but was entitled to read into it any matter which could be considered under the principle of judicial notice. (Code Civ. Proc., §§ 430, 431.5; *Weil* v. *Barthel* (1955) 45 Cal.2d 835, 837 [291 P.2d 30]; *Saltares* v. *Kristovich* (1970) 6 Cal.App.3d 504, 510 [85 Cal.Rptr. 866]; *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 63 [42 Cal.Rptr. 473]; *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804, 806 [42 Cal.Rptr. 314].) In the demurrer, respondents alleged that the second cause of action was barred by section 10400, and requested that the court take judicial notice of "Resolution 70-72 of the Board of Supervisors of the County of San Luis Obispo, dated February 9, 1970, confirming the assessment . . . ."[11]

Such a resolution is a matter of which a court may take judicial notice. (Evid. Code, § 452, subd. (b) and comment thereto by Assembly Committee on Judiciary; Evid. Code, § 200; *Jordan* v. *County of Los Angeles* (1968) 267 Cal.App.2d 794, 798 [73 Cal.Rptr. 516].) Here, the trial court was required to take judicial notice because respondents requested it, gave appellant sufficient notice of the request and furnished the court with sufficient information to enable it to take judicial notice.[12] (Evid. Code, § 453.) We likewise are required to take judicial notice of the resolution. (Evid. Code, § 459, subd. (a).) In so doing, we have consulted a certified copy of the resolution which was an exhibit submitted with, and incorporated by reference in, a petition for writ of prohibition filed by respondents in this court (*County of San Luis Obispo* v. *Superior Court,* Second District, Civ. No. 36511) on May 8, 1970.[13] (Evid. Code, §§ 459

[10]Sections 8570 and 8671 are contained in the Improvement Bond Act of 1915, pursuant to which the bonds were alleged to have been approved.

[11]See footnote 2.
At the hearing on the order to show cause, held May 1st, counsel for respondents argued that the action was barred by section 10400, and requested that the court take judicial notice of Resolution No. 70-72, stating that it could be found "in the files of the District."

[12]See footnote 11.

[13]By the petition for writ of prohibition, respondents sought to prohibit the Superior Court of San Luis Obispo County from taking any action on appellant's petition which is the subject of review herein. The petition for writ of prohibition was denied May 13, 1970. A hearing was denied by the Supreme Court on May 28, 1970.

(b), 454; *Saltares* v. *Kristovich, supra,* 6 Cal.App.3d at p. 511; *Archuleta* v. *Grand Lodge etc. of Machinists* (1968) 262 Cal.App.2d 202, 204-205 [68 Cal.Rptr. 694]; *Conforti* v. *Dunmeyer* (1962) 209 Cal.App.2d 41, 44 [25 Cal.Rptr. 504].)

Resolution No. 70-72 of the County of San Luis Obispo, Atascadero Assessment District No. 1, is entitled "Resolution Confirming Assessment and Ordering Proposed Improvement to Be Made; Providing for Notice of Recording of Assessment; and Designating the San Luis Obispo County Treasurer to Collect and Receive Money." In this resolution, adopted *February 9, 1970,* the board confirmed the assessment, adopted the report of the county hydraulic engineer (Sts. & Hy. Code, §§ 10203, 10204) and ordered the improvement to be made.

Since the assessment was levied by adoption of this resolution and the petition was filed more than 30 days thereafter, the general demurrer to the second cause of action was properly sustained because it was barred by section 10400.

### Third Cause of Action

Appellant alleged: on October 3, 1967, a special bond election was called in Improvement District No. 1 of the Sanitation District to incur an indebtedness for the acquisition and construction of sewerage collection treatment and disposal facilities for the benefit of said improvement district; the bonds were approved by more than a two-thirds majority of the voters, and thereafter were sold; the proceeds of the sale constituted a trust fund to be used for the purposes described in the election; respondents voted to transfer $250,000 from the bond fund to a county account in order to pay engineering estimate costs incurred in connection with a different project; such action by respondents was a breach of fiduciary duty in that the bond funds were diverted from use for the purpose approved by the voters; appellant was damaged thereby, in that the authorized project had not been completed and had been delayed for nine months. Demand was made that the funds immediately be used for the purposes voted upon.

Money derived from the sale of bonds authorized by the electors for a specific purpose must be applied exclusively to such purpose; they cannot be diverted or used for another purpose. (Health & Saf. Code, §§ 4792, 4793; *Uhl* v. *Badarracco* (1926) 199 Cal. 270, 284 [248 P. 917]; *California Highway Com.* v. *Ballard* (1926) 77 Cal.App. 404, 413 [247 P. 527]; 2 Ops.Cal.Atty.Gen. 260 (1943).) Therefore, a cause of action was stated, and the demurrer to the third cause of action should have been overruled.

Respondents contend the demurrer was properly sustained because the money transferred from the bond fund was replaced on April 13, 1970, thereby rendering the third cause of action moot. (See: 2 Witkin, Cal. Procedure (2d ed.) Actions, § 43, pp. 917-920.) The alleged retransfer of such funds appears in an affidavit filed May 1, 1970, by respondents "in opposition to issuance of peremptory writ of mandate." However, in ruling on a demurrer the trial court is bound by the facts as alleged in the pleading against which the demurrer is directed, and it may not consider evidentiary facts presented to it through the medium of an affidavit.[14] (*Kleiner* v. *Garrison* (1947) 82 Cal.App.2d 442, 447 [187 P.2d 57]; *Mackay* v. *Clark Rig Bldg. Co.* (1935) 5 Cal.App.2d 44, 55 [42 P.2d 341].)

Neither party has discussed whether plaintiff has alleged facts giving him standing to compel repayment of the transferred funds; we therefore do not consider that on this appeal. If, after remand, it should appear that the third cause of action is not moot, as respondent claims, plaintiff may wish to amend his complaint and the court may consider its sufficiency as amended.

### Fourth Cause of Action

In this cause of action it was alleged: respondents loaned $110,000 of the county general fund to the Sanitation District to pay for the preparation of reports relating to the assessment bonds; the loan was "illegal and void as a conflict of interest," in that respondents acted as the county board of supervisors in making the loan and as the board of directors of the Sanitation District in accepting and spending the funds. Demand was made for immediate repayment of the loan to the county general fund.

In his opening brief, appellant concedes "The fourth cause of action is now moot in that the loan complained of has been repaid by the Atascadero County Sanitation District." Under such circumstance we see no reason to give consideration to that count.

### Did The Trial Court Abuse Its Discretion in Denying Leave To Amend?

 In his opening brief, appellant states: "The Superior Court . . . did not . . . allow an amendment to the complaint [*sic*] to state additional facts relating to Petitioner's contention." This presumably amounts to an argument that the trial court abused its discretion in sustaining the

---

[14]Accordingly, we do not pass upon respondents' contention that the transfer of funds was a temporary one and that such a temporary transfer to another county fund is lawful, since it does not appear in the petition that the transfer was temporary.

demurrers without leave to amend. Such a contention is reviewable on appeal even though appellant did not request leave to amend. (Code Civ. Proc., § 472c.) Nevertheless, the burden of showing abuse of discretion rests on appellant. (*Harrison* v. *Hanson* (1958) 165 Cal.App.2d 370, 376 [331 P.2d 1084].)

██ In an apparent effort to sustain this burden, appellant's briefs state that he wishes to amend to allege facts which occurred after the petition was filed, and which relate to the manner in which the sale of the bonds was conducted;[15] he also offers to amend to allege that he was a registered voter at the time the action was commenced. Even if the petition were altered in these respects, however, such would fail to cure the defects found in his alleged causes of action. In short, although the petition was an original complaint (i.e., appellant's first effort to state a cause of action), it shows on its face that under the substantive law appellant would be unable to amend to state a cause of action in the first and second counts. The fourth count is conceded now to be moot. Therefore, we conclude that the trial court did not abuse its discretion in sustaining the demurrers to these counts without leave to amend. (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1]; *Hilton* v. *Board of Supervisors* (1970) 7 Cal.App.3d 708, 717 [86 Cal.Rptr. 754]; *Mull* v. *Hunter* (1968) 266 Cal.App.2d 657, 660 [72 Cal.Rptr. 201]; *Robinson* v. *Robinson* (1961) 198 Cal.App.2d 193, 197 [17 Cal.Rptr. 786]; *Ransom* v. *L.A. City High School Dist.* (1954) 129 Cal.App.2d 500, 509 [277 P.2d 455]; *Robertson* v. *City of Long Beach* (1937) 19 Cal.App.2d 676, 679 [66 P.2d 167]; 3 Witkin, Cal. Procedure (2d ed.) Pleading, § 847, p. 2451.)

Since the third count stated facts sufficient to constitute a cause of action, or might be amended so to state, the judgment dismissing the petition must be reversed. (See *Steiner* v. *Rowley* (1950) 35 Cal.2d 713 [221 P.2d 9].)

The judgment is reversed with directions to overrule the demurrer as to the third cause of action, only, and allow respondents time in which to answer. Each side is to bear its own costs of appeal.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied December 17, 1971, and appellant's petition for a hearing by the Supreme Court was denied January 26, 1972.

---

[15]The pleading of such new matter would not "amend" the complaint. Rather, it would constitute a "supplemental" or different complaint in substitution of the original. (Code Civ. Proc., § § 464, 472a, 472c, 473; *Majors* v. *County of Merced* (1962) 207 Cal.App.2d 427, 436-437 [24 Cal.Rptr. 610].)