[No. F016359. Fifth Dist., Aug. 25, 1993.]

HAYTER TRUCKING, INC., Plaintiff and Appellant, v.
SHELL WESTERN E&P, INC., Defendant and Respondent.

**COUNSEL**

Klein, Wegis, DeNatale, Hall, Goldner & Muir, David J. Cooper and Barry E. Rosenberg for Plaintiff and Appellant.

Borton, Petrini & Conron and Mark A. Jones for Defendant and Respondent.

**OPINION**

**MARTIN, J.—** ▆▆▆ Plaintiff transportation firm appeals from a defense judgment in an action for termination of a contract for vacuum truck services.[1]

---

[1]Plaintiff initially appealed from an order on plaintiff's motion for reconsideration of order sustaining demurrer to first amended complaint. An order sustaining a demurrer without leave to amend is nonappealable. (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8]; *Curnutt* v. *Holk* (1962) 203 Cal.App.2d 6, 7 [21 Cal.Rptr. 224].) Courts are split as to whether an order denying a motion for reconsideration (Code Civ. Proc., § 1008) is appealable. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1 (The Rutter Group 1993) ¶ 2:158, p. 2-49.) Some courts allow the appeal if the underlying order was appealable and the motion for reconsideration was based on new or different facts. (See *Rabbitt* v. *Vincente* (1987) 195 Cal.App.3d 170, 174 [240 Cal.Rptr. 524].) Other courts deem orders denying reconsideration analogous to nonappealable orders denying a new trial and, thus, treat them as nonappealable. (*Rojes* v. *Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1160-1161 [250 Cal.Rptr. 435], disapproved on another point in *Passavanti* v. *Williams* (1990) 225 Cal.App.3d 1602, 1605 [275 Cal.Rptr. 887].) On December 15, 1992, plaintiff's counsel applied for an order deeming premature notice of appeal as timely and also applied for an order augmenting the record to reflect the entry of final judgment. On January 11, 1993, this court filed an order deeming the notice of appeal to be valid (Cal. Rules of Court, rule 2(c)) and augmenting the record to include a judgment by court entered in the trial court on December 1, 1992. (Code Civ. Proc., § 664.5, subd. (a); Cal. Rules of Court, rule 41(c).)

## STATEMENT OF THE CASE

On January 31, 1991, plaintiff filed a complaint for breach of written contract, naming Shell Western E&P, Inc., and 50 Does as defendants and praying for compensatory damages according to proof. Defendant Shell Western demurred to the complaint on the grounds it did not state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.20, subd. (a)) and, after a contested hearing, the trial court sustained defendant's demurrer with 20 days leave to amend.

On April 18, 1991, plaintiff filed a first amended complaint for breach of written contract. The first amended complaint pleaded the same cause of action but in greater detail. Defendant again demurred, alleging the pleading did not state facts sufficient to constitute a cause of action.

On June 4, 1991, the court conducted a contested hearing and sustained the demurrer without leave to amend, and on June 11, 1991, the court filed a formal order on demurrer to the first amended complaint.

On or about June 14, 1991, plaintiff moved for reconsideration (Code Civ. Proc., § 1008) of the order sustaining demurrer to the first amended complaint. Plaintiff alleged a different state of facts supporting the motion and attached a proposed second amended complaint to its pleading. On July 2, 1991, the court conducted a contested hearing and denied the motion by minute order and, on July 16, 1991, filed a formal order denying plaintiff's motion for reconsideration.

Plaintiff filed a timely notice of appeal.

## FACTS

In 1987, plaintiff Hayter Trucking, Inc., a California corporation, performed vacuum truck services for oil industry clients from its principal place of business in Taft, California. That same year, defendant Shell Western E&P, Inc., a Delaware corporation, conducted oil field operations in Kern County. Defendant Shell Western, an affiliate of Shell Oil Company, operated the Kernridge Production Division at Highway 33 and 7th Standard Road, 12 miles north of McKittrick.

In the fall of 1987, defendant requested bids on vacuum truck services to be rendered on its Kernridge Production Division facility. Plaintiff submitted a bid on a Shell proposal form and defendant eventually selected plaintiff as the successful bidder. On December 2, 1987, plaintiff and defendant

entered into a separate written contract entitled "PURCHASE ORDER NO. AFSB-823087-KD." Pursuant to that contract, plaintiff agreed to provide defendant with vacuum truck services at Shell's facilities in Kern County from December 3, 1987, through January 31, 1989. Plaintiff and defendant agreed to four alterations to the purchase order during the term of the contract. The alterations occurred on January 19, 1988, July 21, 1988, August 22, 1988, and January 10, 1989. On January 22, 1990, plaintiff and defendant entered into a fifth alteration of the purchase order. The terms of the alteration were effective from February 1, 1990, through January 31, 1992.

Purchase order No. AFSB-823087-CA,[2] as amended by the fifth alteration, stated in relevant part:

"1.1 THIS ALTERATION NUMBER FIVE (5) TO THE ABOVE-NUMBERED BLANKET ORDER IS ORIGINALLY DATED 12/02/87. DO NOT CONFUSE THIS WITH ANY RELEASE AGAINST THIS BLANKET ORDER WHICH MAY CONTAIN SPECIFIC BILLING INSTRUCTIONS WHICH ARE NOT AFFECTED BY THIS ALTERATION.

"1.2 This Blanket Order including instructions and conditions on the reverse side hereof shall constitute an agreement to cover the furnishing by Contractor [plaintiff] of all necessary tools and equipment, materials, labor and supervision (and including the cost of Workers' Compensation and/or Employers' Liability Insurance and all payroll taxes on such labor) to perform work as [specified in the purchase order].

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"3.1 THIS ORDER IS EFFECTIVE 2/01/90 AND SHALL REMAIN IN EFFECT THROUGH 1/31/92 UNLESS CANCELLED BY EITHER PARTY BY GIVING THIRTY (30) DAYS' WRITTEN NOTICE TO THE OTHER PARTY.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"5.1.4 IT IS AGREED THAT THE CONTRACT AND THE ATTACHMENTS THERETO SET FORTH THE ENTIRE AGREEMENT BETWEEN BUYER [DEFENDANT] AND CONTRACTOR. NO ORAL AGREEMENTS MADE HERETOFORE SHALL BE BINDING, AND THAT NO MODIFICATION OR SUPPLEMENT THERETO SHALL BE MADE EXCEPT BY WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

---

[2]At some point, the last two letters of the purchase order changed from "KD" to "CA."

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5.3   Buyer reserves the right to suspend services immediately at any time and/or terminate Contract immediately if, in Buyer's opinion, serious harm would otherwise result to Buyer's operations due to activity of Contractor or quality of product. Buyer would then be free to engage the services of another contractor if necessary for continuity of operations.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"8.1   ALL OTHER TERMS AND CONDITIONS OF THE ORIGINAL ORDER AND ALTERATION(S) THERETO REMAIN THE SAME."[3]

On February 6, 1990, Charles E. Beard, president of plaintiff corporation, signed a written acceptance of the fifth alteration of the purchase order. Pursuant to that acceptance, plaintiff approved the face of the purchase order, the general and work order conditions printed on the back of the purchase order, and applicable attachments and specifications. These attachments included the "Shell Western E&P, Inc. Purchase and Blanket Order Standard Terms and Conditions." The standard terms and conditions stated in relevant part:

"1.1   BUYER [defendant] reserves the right to suspend services immediately at any time and/or terminate the order immediately if, in BUYER's opinion, serious harm would otherwise result to BUYER's operations due to activity of CONTRACTOR or quality of product. BUYER would then be free to engage the services of another contractor if necessary for continuity of operations.

"1.2   This order is issued subject to BUYER's option to reduce or cancel purchase commitment in the event of a noncompetitive price increase, quality deficiency, failure to deliver as scheduled or other unsatisfactory service.

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"6.5   It is agreed that the order and the Attachments thereto set forth the entire agreement between BUYER and CONTRACTOR with respect to the work, that no oral agreements made heretofore shall be binding, and that no modification or supplement thereto shall be made except by written agreement signed by both parties."

---

[3]The fifth alteration did not amend the original purchase order in its entirety. Rather, the fifth alteration only amended and/or replaced selected paragraphs.

On November 8, 1990, defendant sent plaintiff a copy of alteration No. 9 to purchase order No. AFSB-823087-CA. The ninth alteration was designed to "[p]rovide thirty (30) days notice that, effective *12/9/90*, this Order is cancelled in its entirety." Plaintiff's president subsequently signed, but did not date, an acceptance letter as to the ninth alteration.

Plaintiff's first amended complaint alleged in relevant part:

"10.   The agreements between the parties [the Dec. 2, 1987, purchase order and the Jan. 22, 1990, alteration No. 5] permitted either party to cancel said contract on thirty (30) days written notice pursuant to paragraph 3.

"11.   At all times herein mentioned, there existed a trade, custom and usage that contracts for services such as those provided by HAYTER to SHELL could be terminated only for good cause.

"12.   That said custom and usage is, and at all times herein mentioned has been, certain and uniform, of general continuity and notoriety, peaceful, and acquiesced by the whole of the industry.

"13.   This custom and usage was well known to plaintiff and to defendant and was in fact deemed by each of the parties hereto to be an integral part of the contract as set forth in Alteration 5 . . . . Accordingly, it was understood and agreed by the parties that the contract could only be terminated for good cause, and that the 30 day termination clause of paragraph 3 of the Alteration Five . . . governed the manner in which the contract could be terminated rather than the basis upon which the contract could be terminated.

"14.   SHELL and HAYTER, knowing said trade, custom and usage in the industry, at all times mentioned herein, did intend, understand, and agree that said termination clause to require good cause.

"15.   Although paragraph 5.3 of Alteration Five (5) also permitted the parties to suspend the agreement immediately under emergency or extreme circumstances, this clause was intended by the parties to be limited in its effect to such emergency circumstances and was not intended by the parties to govern in non-emergency or non-extreme circumstances.

"16.   On or about November 8, 1990, without good cause, SHELL provided HAYTER with thirty (30) days written notice that SHELL was terminating the written agreement . . . effective December 9, 1990. . . .

"17.   HAYTER has performed all conditions, covenants and promises required by them on their part to be performed in accordance with the terms and conditions of [alteration No. 5].

"18. On or about November 8, 1990, SHELL breached the contract with HAYTER by terminating the contract without good cause under the terms of the contract."

Defendant demurred to the first amended complaint, arguing: "In its original complaint, plaintiff alleged that its understanding of the termination clause was that the provision could be exercised only for 'good cause.' Plaintiff further asserted that this understanding was in accordance with an alleged trade, custom and usage that contracts for services similar to those to be provided under the Shell/Hayter contract could be terminated only for 'good cause.' The Kern County Superior Court, Judge Randall presiding, granted Shell's demurrer with leave to amend. In granting such leave to amend, the court cautioned plaintiff's counsel that it did not perceive that the fatal defects existing in plaintiff's original pleadings could be remedied.

"The sole difference between plaintiff's original complaint and its first amended complaint is that instead of asserting, as before, that the alleged trade, custom and usage was *in accordance with* the plaintiff's alleged understanding of the contract, the plaintiff now asserts that the alleged trade, custom and usage was *the basis for* its alleged understanding. The result of this modification is that plaintiff now concedes that there was no collateral understanding between the parties, but rather now seeks to establish that its unilateral understanding was different from that expressed in the contract.

"Because there is no substantive variance between plaintiff's original and first amended complaints, and because the court, in the original demurrer hearing, squarely addressed the issue now specifically pled, the plaintiff's action has been effectively foreclosed by the granting of defendant's original demurrer."

On June 4, 1991, the court sustained defendant's demurrer to the first amended complaint without leave to amend, stating: "This is a demurrer to the first amended complaint in this matter. And, of course, as all sides know there's always a question of interpretation of a contract. The tentative [decision] is to sustain without leave to amend . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . What it really boils down to is what the present status of California law is with regard to the interpretation of integrated contracts . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . And the question is, is it the position of the California Supreme Court at the present time that where there is integrated contract, parol

evidence may be introduced . . . if it clarifies an ambiguity or discrepancy in a contract or parol evidence also be introduced in the case of a revision or total change in a contract by virtue of such things as, for example, trade, custom and usage.

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [I]t seems that [the California Supreme Court] is saying [in *AIU Ins. Company* v. *Superior Court* (1990) 51 Cal.3d 807 (274 Cal.Rptr. 820, 799 P.2d 1253)] that the language of the contract, if it's in plain terms, governs the interpretation. And there has to be some showing. It's very critical of [*Pacific Gas & E. Co.* v. *G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 (69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373)], for example. . . . It's a little hard to reconcile that holding [in *AIU Ins.*] with the earlier holdings of the Supreme Court on which [plaintiff attempts] to rely. It seems to me there is a weather change in the works here . . . .

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . Mr. Cooper [plaintiff's counsel], what does a draftsman have to do to draft around trade, custom and usage? You don't suggest that he has to recite trade, custom and usage in the document and then say we specifically do not intend that custom and usage to apply here, do you? . . .

"
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [W]hen I read that trade, custom and usage into that clause, I have to destroy [paragraph] 5.3 it seems to me."

## DISCUSSION

Plaintiff contends a demurrer may not be granted when the complaint alleges an interpretation for which the contract is reasonably susceptible:

"The gravamen of HAYTER's complaint is that the 30 day notice of termination clause in the contract was understood and intended by the parties to require good cause to support a termination within the contract term. In this connection, Appellant alleges the existence of extrinsic evidence in the form of trade custom and usage which supports Appellant's contentions as to the intended meaning of the disputed contract.

"The court granted SHELL's demurrer without leave to amend based on the court's assessment of the meaning of the terms of the contract. In doing

so, the court rejected express allegations in HAYTER's complaint concerning alternative meanings to which the contract language was reasonably susceptible. For the purposes of a demurrer, these allegations must be assumed as true and the court's rejection of such allegations as a factual matter constitutes reversible error.

"Several courts have applied the legal principles articulated in *Pacific Gas & Electric Company, Inc., supra,* in the context of a demurrer. Unless the interpretation proffered in the complaint is conclusively negated by a provision in the contract, a demurrer is improper. Four recent cases have interpreted language virtually identical to the contract at issue and have concluded that such language, as a matter of law, is reasonably susceptible to the interpretation proffered by HAYTER.

"The justification for admitting parol evidence of trade custom and usage is even more compelling than admitting other extrinsic evidence. Parties to commercial contracts are 'deemed' to use and intend terms and words in contracts consistent with trade custom and usage. The rationale behind this doctrine is a recognition that at least a preliminary consideration of parol evidence is necessary to avoid giving a meaning to a document not intended by the parties—irrespective of whether the contract is ambiguous or unambiguous to the court."

■ A trial court abuses its discretion in sustaining a demurrer without leave to amend if there is a reasonable possibility a defect in the complaint can be cured by amendment or if the pleading can be liberally construed to state a cause of action. ■ A demurrer admits all material and issuable facts properly pleaded. However, it does not admit contentions, deductions, or conclusions of fact or law alleged therein. (*Hooper* v. *Deukmejian* (1981) 122 Cal.App.3d 987, 994 [176 Cal.Rptr. 569].) In a broad sense, a "cause of action" is the invasion of a primary right, such as injury to person or to property. ■ In more common usage, "cause of action" means a group of related paragraphs in the complaint reflecting a separate theory of liability. (*Lilienthal & Fowler* v. *Superior Court* (1993) 12 Cal.App.4th 1848, 1853 [16 Cal.Rptr.2d 458], citing, 3 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1993) § 10:39, p. 10-13.) A reviewing court gives the complaint a reasonable interpretation, reading it as a whole and its parts in their context. If there is a reasonable possibility the defect can be cured by amendment, the trial court has abused its discretion and the reviewing court must reverse. If there is no such reasonable possibility, there is no abuse of discretion and the reviewing court must affirm. The burden of proving such reasonable possibility is squarely on the plaintiff. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703

P.2d 58]; *O'Keefe* v. *Atascadero County Sanitation Dist.* (1971) 21 Cal.App.3d 719, 730-731 [98 Cal.Rptr. 878].)

■ In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties. (*Richard H.* v. *Larry D.* (1988) 198 Cal.App.3d 591, 594 [243 Cal.Rptr. 807].) ■ A judgment of dismissal entered after the trial court has sustained a demurrer without leave to amend will be affirmed on appeal if any of the grounds stated in the demurrer is well taken. (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) When an appeal arises from the sustaining of a demurrer to an amended complaint, the reviewing court considers only the allegations of the amended complaint to ascertain whether a cause of action is stated. (*Provouskivitz* v. *Snow* (1977) 74 Cal.App.3d 554, 558 [141 Cal.Rptr. 531].) ■ The reviewing court is not bound by the trial court's construction of the pleadings. Rather, the reviewing court must make its own independent judgment thereon, even as to matters not expressly ruled upon by the trial court. (*Miller* v. *Bakersfield News-Bulletin, Inc.* (1975) 44 Cal.App.3d 899, 901 [119 Cal.Rptr. 92].)

■ The parol evidence rule generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument. An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement. (*Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 21-23 [92 Cal.Rptr. 704, 480 P.2d 320]; Rest.2d Contracts, § 209, subd. (1).) In California, the rule is embodied in Code of Civil Procedure section 1856, which states in relevant part:

"(a) Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

"(b) The terms set forth in a writing described by subdivision (a) may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement.

"(c) The terms set forth in a writing described in subdivision (a) may be explained or supplemented by course of dealing or usage of trade or by course of performance.

"(d) The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as

are included therein and whether the writing is intended also as a complete and exclusive statement of the terms of the agreement."

■ The parol evidence rule is not merely a rule of evidence concerned with the method of proving an agreement. Rather, it is a principle of substantive law. The rule derives from the concept of an integrated contract. When the parties to an agreement incorporate the complete and final terms of the agreement in a writing, such an integration in fact becomes the complete and final contract between the parties. Such a contract may not be contradicted by evidence of purportedly collateral agreements. As a matter of law, the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, both oral and written, are excluded. (*Alling* v. *Universal Manufacturing Corp.* (1992) 5 Cal.App.4th 1412, 1433-1434 [7 Cal.Rptr.2d 718].)

■ The determination of whether the agreement in the instant case is an integration, i.e., intended by the parties as a final, complete and exclusive statement of their agreement, is a question of law to be determined by the court. Evidence of surrounding circumstances and prior negotiations may be admitted for the limited purpose of assisting the trial court in determining whether a document was intended to be the final agreement of the parties superseding all other transactions. Even if the court so determines, the terms set forth therein may be explained or supplemented by evidence of consistent additional terms unless the writing is intended also as a complete and exclusive statement of the terms of the agreement. Thus, a prior or contemporaneous collateral oral agreement relating to the same subject matter may sometimes be admitted in evidence. However, this is true only where it is consistent with the terms of the integration. (*Alling* v. *Universal Manufacturing Corp.*, *supra*, 5 Cal.App.4th at pp. 1434-1435.)

■ An integration may be partial as well as complete. In other words, the parties may intend a writing to finally and completely express certain terms of their agreement rather than the agreement in its entirety. (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385 [265 Cal.Rptr. 412].) When only part of the agreement is integrated, the parol evidence rule applies to that part. However, extrinsic evidence may be used to prove elements of the agreement not reduced to writing. (*Wallis* v. *Farmers Group, Inc.* (1990) 220 Cal.App.3d 718, 730 [269 Cal.Rptr. 299].)

■ Application of the parol evidence rule to exclude a collateral oral agreement raises a question of law to be determined by the court. Upon

appellate review, the court is not bound by the trial court's determination and may consider the issue de novo. Application of the rule involves a two-part analysis. First, was the writing intended to be an integration, i.e., a complete and final expression of the parties' agreement, precluding any evidence of collateral agreements? Second, is the agreement susceptible of the meaning contended for by the party offering the evidence? Put another way, if a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Banco Do Brasil, S.A.* v. *Latian, Inc.* (1991) 234 Cal.App.3d 973, 1001 [285 Cal.Rptr. 870], cert. den. __ U.S. __ [119 L.Ed.2d 588, 112 S.Ct. 2967].) Thus, parol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous. Parol evidence cannot be admitted to show intention independent of an unambiguous written instrument. (*Sunniland Fruit, Inc.* v. *Verni* (1991) 233 Cal.App.3d 892, 898 [284 Cal.Rptr. 824].)

▮ Generally speaking, words in a contract are to be construed according to their plain, ordinary, popular or legal meaning, as the case may be. However, particular expressions may, by trade usage, acquire a different meaning in reference to the subject matter of a contract. If both parties are engaged in that trade, the parties to the contract are deemed to have used them according to their different and peculiar sense as shown by such trade usage and parol evidence is admissible to establish the trade usage even though the words in their ordinary or legal meaning are entirely unambiguous. (*Paramount Television Productions, Inc.* v. *Bill Derman Productions* (1968) 258 Cal.App.2d 1, 10-11 [65 Cal.Rptr. 473].)

▮ In the instant case, plaintiff's first amended complaint alleged in relevant part: "At all times herein mentioned, there existed a trade, custom and usage that contracts for services such as those provided by HAYTER to SHELL could be terminated only for good cause. . . . That said custom and usage is, and at all times herein mentioned has been, certain and uniform, of general continuity and notoriety, peaceful, and acquiesced by the whole of the industry. . . . This custom and usage was well known to plaintiff and to defendant and was in fact deemed by each of the parties hereto to be an integral part of the contract as set forth in Alteration 5 . . . . Accordingly, it was understood and agreed by the parties that the contract could only be terminated for good cause, and that the [30-day] termination clause of paragraph 3 of the Alteration Five . . . governed the manner in which the contract could be terminated rather than the basis upon which the contract could be terminated."

▮ "Usage" is a uniform practice or course of conduct followed in certain lines of business or professions, or in some procedure or phase of a

business or profession. When an established usage is known to the parties to a transaction, it becomes a rule of law which the courts will recognize in determining the rights of parties whose relations come within the usage, absent a controlling statute. (*Turner* v. *Donovan* (1935) 3 Cal.App.2d 485, 487-488 [39 P.2d 858].) Several courts have held it is unnecessary to plead a custom or usage where it is so general that it is presumed to have been known by the parties to a contract. (*Todd* v. *Meserve* (1928) 93 Cal.App. 370, 379-380 [269 P. 710]; *Covely* v. *C. A. B. Construction Co.* (1952) 110 Cal.App.2d 30, 33 [242 P.2d 87].) Moreover, evidence of usage is admissible, whether or not it has been pleaded, on the theory it must be presumed the parties, being specialists in the field, knew of the trade usage or custom. (*Asso. Lathing etc. Co.* v. *Louis C. Dunn, Inc.* (1955) 135 Cal.App.2d 40, 48-49 [286 P.2d 825].)

As noted above, the instant appeal arises after the sustaining of a demurrer without leave to amend. From a procedural prospective, the closest case on point is *Southern Pacific Land Co.* v. *Westlake Farms, Inc.* (1987) 188 Cal.App.3d 807 [233 Cal.Rptr. 794]. The *Southern Pacific* case arose from the interpretation of an oil and gas lease. Westlake Farms, Inc., Ceil W. Howe, and Edwin H. Howe, Jr., as lessors, and American Quasar Petroleum Co. of New Mexico, as lessee, entered into the lease on September 15, 1980. American Quasar subsequently assigned the lease to Southern Pacific Land Company. The central dispute dealt with the expiration of the lease. The primary term of the lease expired September 15, 1983. The "habendum" clause of the lease stated: "EXCEPT AS OTHERWISE HEREIN PROVIDED," the duration of the lease shall be ". . . for a term of three (3) years . . . and so long thereafter as oil, gas . . . or either . . . of them . . . is produced from said land in paying quantities . . . ." Southern Pacific started drilling its first well on September 13, 1983. On September 14, the day before the end of the primary term of three years, Southern Pacific completed drilling that well to a depth of one thousand three hundred feet. That well was plugged and abandoned as a dry hole without establishing commercial production.

Southern Pacific maintained the lease did not automatically terminate on September 15, 1983, because paragraph 9 of the lease "otherwise provided" an additional leasehold period of 120 days. The lessors claimed the lease terminated at the end of the three-year primary term and prevented the lessee from drilling a second well. On November 16, 1983, Southern Pacific filed a complaint for declaratory relief and damages. Westlake Farms demurred to the complaint on two grounds: (1) failure to join indispensable parties, and (2) automatic termination of the lease upon expiration of the primary term. The Kings County Superior Court sustained the demurrer on both grounds and gave Southern Pacific time to amend to join indispensable parties. The

court sustained the demurrer as to the contractual causes of action without leave to amend. In sustaining the demurrer, the lower court concluded there was no reasonable interpretation of paragraph 9 of the lease, consistent with the remaining portions of the lease, which would extend the primary term of the lease upon the drilling of a dry hole. Southern Pacific appealed from a subsequent judgment of dismissal and this court reversed.

The lower court concluded the lease, within its four corners, had a plain meaning. Thus, it would be inappropriate to receive extrinsic evidence regarding (1) the purpose and effect of the lease; (2) the custom and usage in the oil and gas industry; (3) the practical construction the parties had given the lease; and (4) the sense in which the parties had used the words. This court held such an approach erroneous in light of the landmark case of *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37-40 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]. There, our Supreme Court held that rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. Such evidence includes testimony as to the circumstances surrounding the making of the agreement, including the object, nature, and subject matter of the writing. In that way, the court can place itself in the same situation in which the parties found themselves at the time of contracting. If the court decides the language of a contract, in light of all the circumstances, is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence relevant to prove either of such meanings is admissible.

Westlake Farms argued Southern Pacific did not offer extrinsic evidence in response to Westlake's demurrer. Therefore, Westlake maintained Southern Pacific was precluded from raising the issue on appeal. This court held Westlake's point to be without merit. In ruling on a demurrer, the court must assume the truth of the factual allegations of the complaint. The function of a demurrer is to test the legal sufficiency of the challenged pleading by raising questions of law. The demurrer tests the pleading alone and not the evidence or other extrinsic matters. The demurrer lies only where the defects appear on the face of the pleading. Objections which do not so appear are raised by answer. Failure to plead what extrinsic evidence will be offered does not constitute a waiver. Where an ambiguous contract is attached and incorporated into the complaint, the party pleading is only required to allege in the complaint the meaning which the party ascribes to that contract. The complaint in the *Southern Pacific* case satisfied those pleading requirements. We concluded the lower court should not have ruled on the lease provisions on the assumption the plain meaning of the words and provisions in the lease prevailed and remanded the case to the trial court for further proceedings.

The Second District Court of Appeal expanded on the principles of *Southern Pacific* in *Beck* v. *American Health Group Internat., Inc.* (1989) 211

Cal.App.3d 1555 [260 Cal.Rptr. 237]. Ordinarily, a written contract is sufficiently pleaded if it is set out in full or its terms are alleged according to their legal effect. However, if the instrument is ambiguous, the pleader must allege the meaning he or she ascribes to it. In some cases, a written contract is pleaded by attachment to and incorporation in a complaint, and the complaint fails to allege the terms of the contract have any special meaning. In such instances, a court will construe the language of the contract on its face to determine whether, as a matter of law, the contract is reasonably subject to a construction sufficient to sustain a cause of action for breach. Interpretation of a written instrument is solely a judicial function unless the interpretation turns upon the credibility of extrinsic evidence. (*Id.* at pp. 1561-1562.)

In the instant case, plaintiff Hayter Trucking attached several documents to its first amended complaint, including a copy of purchase order No. AFSB-823087-KD, dated December 2, 1987, and a copy of alteration No. 5, dated January 22, 1990. Where an ambiguous contract is attached and incorporated into the complaint, the pleader is only required to allege in the complaint the meaning which he or she ascribes to that contract. (*Southern Pacific Land Co.* v. *Westlake Farms, Inc., supra,* 188 Cal.App.3d at p. 817.) Here, plaintiff alleged "there existed a trade . . . custom and usage that contracts for services such as those provided by HAYTER to SHELL could be terminated only for good cause. . . . That said custom and usage is, and at all times herein mentioned has been, certain and uniform, of general continuity and notoriety, peaceful, and acquiesced by the whole of the industry." Thus, plaintiff satisfied pleading requirements by alleging the meaning which it ascribed to the termination provisions of the contract. The first amended complaint did not merely incorporate a copy of the original purchase order and alteration No. 5 by reference, leaving those documents to speak for themselves. Rather, plaintiff attached those documents to the complaint, incorporated them "as though fully alleged," and then set forth the meaning which plaintiff ascribed to the documents. Nothing further was required for purposes of pleading. And in accordance with our holding in *Southern Pacific,* the lower court should not have ruled on the termination provisions on the assumption the plain meaning of the words and provisions in the documents prevailed. (*Southern Pacific Land Co.* v. *Westlake Farms, Inc., supra,* 188 Cal.App.3d at p. 817.)

Defendant nevertheless contends *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807 [274 Cal.Rptr. 820, 799 P.2d 1253] compels a different result here. In *AIU Ins. Co.,* petitioners issued comprehensive general liability policies to real party in interest FMC Corporation. A question arose as to whether the insurers were obligated to provide coverage to FMC for cleanup

and other "response" costs incurred pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 et seq.) and related state and federal environmental laws. The lower court denied the insurers' motion for summary adjudication. The Sixth District Court of Appeal issued a peremptory writ of mandate directing the superior court to enter summary adjudication in favor of the insurers. Our Supreme Court reversed the decision of the Court of Appeal. The insurance policies provided coverage to FMC for all sums FMC became legally obligated to pay as "damages" or "ultimate net loss" because of property damage. Under established principles of contract interpretation, the Supreme Court construed policy language according to the mutual intentions of the parties and its "plain and ordinary" meaning, resolving ambiguities in favor of coverage. The Supreme Court concluded the policies covered the costs of reimbursing government agencies and complying with injunctions ordering cleanup under CERCLA and similar statutes.

Defendant submits in the instant case: "[S]tatutory canons of contract interpretation together with the analysis provided in [*AIU Ins. Co.*] make it clear that the only instance in which the 'ordinary and popular' meaning of language used in a contract will give way to that of custom, usage and trade, is where the particular term sought to be interpreted is used in a 'technical' or 'specialized' sense. Therefore, where the meaning a layperson would ascribe to the contract language is not ambiguous, a court should interpret the contract in accordance with that plain and ordinary meaning."

Defendant's argument ignores the context of *AIU Ins. Co.* The Supreme Court applied "principles of insurance policy interpretation" to decide *AIU Ins. Co.* (*AIU Ins. Co.* v. *Superior Court, supra,* 51 Cal.3d at p. 821.) Reviewing courts generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured. These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to bargain for modifications. Because the insurer writes the policy, it is held "responsible" for ambiguous policy language and reviewing courts generally resolve such ambiguities in favor of coverage. Moreover, if the meaning a layperson would ascribe to the policy language is not ambiguous, the reviewing court applies that meaning. (*Id.* at pp. 821-822.) The insurance business in California is "quasi-public" in nature, and the reasonable expectation of both the insured and the general public is that those engaged in the insurance business have extra contractual duties to act reasonably and lawfully. Because of this, the rights and obligations of the insurer cannot be determined solely on the basis of rules pertaining to private contracts negotiated by individual parties of relatively equal bargaining strength.

(*Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 669 [79 Cal.Rptr. 106, 456 P.2d 674]; *Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1446 [2 Cal.Rptr.2d 683].) And because of these specialized rules and public policy considerations utilized in interpreting or construing insurance contracts, it is our view that *AIU Ins. Co.* must be distinguished from the instant case.

Finally, the traditional parol evidence rule allowed extrinsic evidence to give meaning to a writing only when the writing was ambiguous. In 1968, the California Supreme Court liberalized the traditional rule by rejecting the "plain meaning rule." Hence, extrinsic evidence relevant to interpretation can no longer be barred simply because of a judicial determination that a writing appears to have only one interpretation. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.*, *supra*, 69 Cal.2d 33; *Southern Pacific Land Co.* v. *Westlake Farms, Inc.*, *supra*, 188 Cal.App.3d at p. 815.) Parol evidence is now admissible to show mutually shared meanings of words used irrespective of their ordinary meaning. (*Estate of Russell* (1968) 69 Cal.2d 200, 209 [70 Cal.Rptr. 561, 444 P.2d 353].) Most importantly, parol evidence of custom and usage is similarly admissible to interpret the written words. (*Paramount Television Productions, Inc.* v. *Bill Derman Productions*, *supra*, 258 Cal.App.2d at p. 10; *Columbia Casualty Co.* v. *Northwestern Nat. Ins. Co.* (1991) 231 Cal.App.3d 457, 470, fn. 3 [282 Cal.Rptr. 389].) Defendant has not cited and we have been unable to find any portion of *AIU Ins. Co.* expressly or implicitly overruling or limiting the principles set forth in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.*, *supra*. Therefore, defendant's reliance on *AIU Ins. Co.* is misplaced.

Defendant lastly contends reversal is not required because "even if proven to exist, a custom, usage and trade practice of 'cause only' termination would contradict rather than explain or supplement the express terms of the Shell-Hayter contract." Defendant's contention ignores the express language of Code of Civil Procedure section 1856, subdivision (c), which states: "The terms set forth in a writing described in subdivision (a) [integrated agreement] may be explained or *supplemented* by course of dealing or usage of trade or by course of performance." (Italics added.) Exceptions to the general rule of a statute are to be strictly construed and, in interpreting exceptions to the general statute, courts include only those circumstances which are within the words and reason of the exception. (*Da Vinci Group* v. *San Francisco Residential Rent etc. Bd.* (1992) 5 Cal.App.4th 24, 28 [6 Cal.Rptr.2d 461].) The Code of Civil Procedure does not define the term "supplemented." However, the verb "supplement" is commonly defined to mean "to fill up or supply by additions . . . add something to . . . fill the deficiencies of . . . ." (Webster's New Internat. Dict. (3d ed. 1986) p.

2297.) In view of the express language of Code of Civil Procedure section 1856, subdivision (c), the terms of the Shell-Hayter purchase order and alteration No. 5 may be "explained or supplemented" by course of dealing or usage of trade or by course of performance.[4]

Thus, we conclude the trial court should not have ruled on the termination provisions of the contract on the assumption the plain meaning of the words and provisions in the Shell-Hayter purchase order and alteration No. 5 prevailed. Therefore, the lower court's judgment is reversed and the matter remanded for further proceedings.

The judgment is reversed. Appellant is awarded costs on appeal.

Best, P. J., and Franson, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied November 17, 1993. Panelli, J., and Baxter, J., were of the opinion that the petition should be granted.

---

[4]We note paragraph 6.5 of the Shell Western standard terms and conditions and paragraph 5.1.4 of alteration No. 5 expressly preclude oral supplements to the contract. Plaintiff is nevertheless entitled to *explain* the terms of its contract with Shell by course of dealing or usage of trade. (Code Civ. Proc., § 1856, subd. (c).)

*Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.